IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILLIAM WALLACE MCGUIRE,
    Petitioner,

vs.                                      Case No.:  3:03cv479/LAC/EMT

JAMES V. CROSBY, JR.,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer, including relevant portions of the state court record, in which he asserted that Grounds One and Two of the six grounds asserted by Petitioner were subject to dismissal, but an evidentiary hearing would be beneficial on the remaining four grounds (*see* Doc. 9 at 22).  Petitioner filed a reply requesting an evidentiary hearing on all six grounds (*see* Doc. 15). In light of Respondent's response, this Court scheduled an evidentiary hearing on Grounds Two through Six and appointed counsel to represent Petitioner (*see* Doc. 19).  At Petitioner's request, the evidentiary hearing was continued (*see* Docs. 37, 38).  Additionally, Petitioner now concedes that an evidentiary hearing is necessary only as to Grounds Two and Three (*see* Doc. 40).

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After a careful review of the state court record and consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND

Petitioner was originally charged by information in the Circuit Court in and for Okaloosa County, Florida, with sexual battery upon a person less than twelve years of age by vaginal penetration (Doc. 10, Ex. A at 3). On July 10, 2000, pursuant to a plea agreement, the State amended the information to charge Petitioner with one count of attempted sexual battery on a victim under 12 years of age, a first degree felony punishable by up to thirty (30) years of incarceration, and one count of attempted lewd and lascivious conduct, a third degree felony punishable by up to five (5) years of incarceration (Doc. 10, Ex. A at 168, Ex. G at 27). Petitioner entered a no contest plea to the charges, conditioned upon a sentence of thirty years on the attempted sexual battery charge and a consecutive sentence of five years on the attempted lewd and lascivious charge (Doc. 10, Ex. G at 16-21). Additionally, the plea was conditioned upon the State's stipulation that the trial court's denial of Petitioner's motion to suppress his confession was dispositive, and Petitioner specifically reserved the right to appeal the court's denial of the motion to suppress (*id.*). Petitioner was sentenced to a term of thirty years of imprisonment on count one and a consecutive term of five years of imprisonment on count two (*id.*, Ex. A at 186-91).

Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA") (*id.*, Ex. B). Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court (*id.*). Petitioner filed a pro se brief challenging the legality of his confession to police and the legality of his sentence (*id.*, Ex. C). The appellate court affirmed the conviction and sentence on August 30, 2001, with the mandate issuing September 17, 2001 (*id.*, Exs. E, F).

On November 16, 2001, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, alleging the same grounds raised in the instant federal habeas petition (*id.*, Ex. G at 1-12). On August 8, 2002, the trial court summarily denied the motion on the ground that the transcript of the plea and sentencing proceeding conclusively demonstrated that Petitioner was not entitled to relief (*id.* at 23-32). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the decision per curiam without opinion on January 16, 2003, with the mandate issuing February 11, 2003 (*id.*, Exs. H, I).

Petitioner filed the instant federal habeas petition on October 14, 2003 (Doc. 1 at 6). Respondent concedes that the petition is timely and that Petitioner exhausted or technically exhausted his state court remedies (Doc. 9 at 6, 7-22).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and –-except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523). The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003); Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Although Williams set forth the Supreme Court's interpretation of § 2254(d)(1), not § 2254(d)(2), the Court subsequently enunciated the § 2254(d)(2) standard:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also Williams, 529 U.S. at 399, 120 S.Ct. 1495 (opinion of O'CONNOR, J.).

Miller-El, 537 U.S. 322, 123 S.Ct. at 1041 (dicta).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002); Fugate, 261 F.3d 1206. First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate, 261 F.3d at 1216 (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-04). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must go to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

III. PETITIONER'S CLAIMS

    A.    Ground One:

        "Trial court erred in denying motion to suppress statement that were [sic] obtained illegally."

(Doc. 1 at 4). Petitioner states Detective Pond of the Fort Walton Police Department lied to him during his interview with police to obtain incriminating statements that he otherwise would not have made (*id.*). Petitioner states his trial counsel filed a motion to suppress the statements, but the trial court denied the motion (*id.*). He asserts the trial court's denial of the motion violated his Fourth, Fifth, and Fourteenth Amendment rights (*id.*). Respondent asserts that Petitioner's claim is not cognizable in federal habeas proceedings pursuant to the long-standing principle enunciated in Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) that where the State has provided an opportunity for full and fair litigation of the Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief (Doc. 9 at 8-9).

The Supreme Court has declined to extend Stone to claims under the Fifth and Fourteenth Amendment challenging the voluntariness of confessions made in response to custodial

interrogation, and has held that the voluntariness of such statements is subject to federal habeas review. <u>Withrow v. Williams</u>, 507 U.S. 680, 688-95, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993).

        1.        Clearly Established Supreme Court Law

To determine whether a confession has been made "freely, voluntarily, and without compulsion or inducement of any sort," the court must examine the totality of the circumstances surrounding the confession. <u>Withrow</u>, 507 U.S. at 688-89 (internal quotation and citations omitted). This determination requires an inquiry, first, into whether the law enforcement officers informed the accused of his various constitutional rights as set forth in <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and if so, second, into whether, considering all of the surrounding circumstances, the statement was the product of the accused's free and rational choice. <u>Paxton v. Jarvis</u>, 735 F.2d 1306, 1308 (11th Cir.), *cert. denied*, 469 U.S. 935, 105 S.Ct. 335, 83 L.Ed.2d 271 (1984). "The Supreme Court has declined to find coercion in cases involving twelve hours of interrogation, promises by police that the defendant's father would be released and that his brother would not be prosecuted, and misrepresentations by police that a codefendant had confessed." *See* <u>Martin v. Wainwright</u>, 770 F.2d 918, 927 (11th Cir.1985) (citations omitted), *modified on other grounds*, 781 F.2d 185 (11th Cir.), *cert. denied*, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). Additionally, if the accused requested counsel at any time during interrogation, he should not have been further questioned until a lawyer was made available or he himself reinitiated the conversation. <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

The voluntariness of a confession is a legal question requiring an independent federal determination, but with deference to the state court's decision. The Section 2254(e)(1) presumption of correctness addressed above applies to subsidiary findings underlying the state court's resolution of the question of voluntariness, <u>Miller v. Fenton</u>, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Such findings may involve the circumstances of the accused's interrogation and custody, his mental condition, and the actions of the law enforcement officers. <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1263 (11th Cir.), *cert. denied*, 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). If the state court failed to make explicit findings of fact, its denial of the motion to suppress "resolves all conflicts in testimony bearing on that claim against the criminal defendant." <u>Waldrop v. Jones</u>, 77 F.3d 1308, 1316 (11th Cir.) (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 604-05, 81

S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961)), *cert. denied*, 519 U.S. 898, 117 S.Ct. 247, 136 L.Ed.2d 175 (1996). The federal habeas court presumes the correctness of credibility determinations made at the trial court level. *See* Marshall v. Lonberger, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

        2.        Federal Review of State Court Proceedings

During pre-trial proceedings, Petitioner filed a motion to suppress statements, admissions or confessions made at the Fort Walton Beach Police Department, in which he confessed to touching the child victim's vagina with his finger. The motion to suppress was denied after a full hearing (Doc. 10, Ex. A at 30-161, 207-78). The trial judge denied the motion without explicit factual findings; however, implicit in the court's decision was the conclusion that Petitioner's statements were freely and voluntarily made (*id.* at 161). Petitioner raised the issue on direct appeal of his conviction, and the appellate court summarily affirmed the trial court (Doc. 10, Ex. C at 7-14, Ex. E).

Petitioner contends the custodial statements described above were improperly coerced because Detective Pond "fabricated a lie" to obtain the confession (Doc. 1 at 4). At the suppression hearing, Detective Pond, one of the two officers interrogating Petitioner, testified he told Petitioner that the victim's hymen had been punctured (Doc. 10, Ex. A at 245). Detective Pond acknowledged that a medical report issued after the interrogation showed that the victim's hymen had not been punctured (*id.*). Pond testified that at the time of the interrogation, he did not know whether the hymen had been punctured, but he used a technique of "maximiz[ing]" as a way of obtaining Petitioner's confession to more "minimal" conduct (*id.* at 245-46, 249-50). No testimony was adduced at the suppression hearing regarding any coercive effect upon Petitioner resulting from the officer's statement regarding the victim's medical condition. Additionally, Petitioner's interview with law enforcement lasted nearly three hours, and the transcript of Petitioner's statement (Doc. 10, Ex. A at 33-159) is one-hundred twenty six (126) pages in length. It can hardly be said that one inaccurate statement by Detective Pond during the lengthy interview rendered the entire confession involuntary, especially in light of the Supreme Court's view that a misrepresentation does not necessarily render an otherwise valid confession invalid. *See* Martin, 770 F.2d at 927.

Upon independent review of the record and consideration of the totality of the circumstances of the interrogation, this Court independently concludes that Petitioner was not improperly tricked or coerced into making statements to police. Petitioner's decision to admit he touched the victim's vagina with his finger was a deliberate, free and knowing choice not to remain silent. Petitioner has failed to establish that the state court decision denying his claim was contrary to or an unreasonable application of Supreme Court precedent; therefore, the state court's determination is entitled to deference, and federal habeas relief is not available.

B.  Ground Two:

> "I was denied effective assistance of counsel, based on counsel's failure to conduct a reasonable pre-trial investigation."

(Doc. 1 at 4). Petitioner states his counsel performed deficiently by failing to investigate an alibi defense (*id.* at 1a-2a). Additionally, he asserts his counsel failed to properly challenge Petitioner's confession to police on the grounds that Detective Pond lied about the victim's hymen having been punctured, and Petitioner was intoxicated with medication during the interrogation (*id.* at 1a). Petitioner asserts his counsel's alleged deficiency caused him to enter an involuntary plea (*id.*).

1.  Counsel Failed to Investigate Viable Defense

Petitioner claims his counsel provided constitutionally ineffective assistance because he failed to investigate an alibi defense; specifically, counsel failed to obtain time sheets from Petitioner's employer and the victim's father's employer, and failed to question Petitioner's wife (*id.* at 1a-2a).

a.  Clearly Established Federal Law

The legal standard clearly established by the Supreme Court for ineffectiveness of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Fugate, 261 F.3d at 1216-17; Wellington, 314 F.3d at 1260 (both citing Williams and Strickland). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069; Wellington, 314 F.3d at 1260. In assessing performance, the court considers whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466

U.S. at 686, 104 S.Ct. at 2064. "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066. Petitioner must show that "no competent counsel would have taken the action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted).

"[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; see also Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000); Holsomback v. White, 133 F.3d 1382, 1387 (11th Cir. 1998). No absolute duty exists to investigate particular facts or a certain line of defense. Williamson, 221 F.3d at 1180; Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000). The mere existence of alternate strategies or approaches, even better ones, does not render counsel's strategy ineffective. Chandler, 218 F.3d 1314. Counsel cannot be found incompetent "as long as the approach taken 'might be considered sound trial strategy.'" Id. (quoting Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986)). Petitioner bears the heavy burden of persuasion to disprove that counsel's performance was competent and reasonable by showing that no competent counsel would have chosen the course of action that his counsel in fact took. Id. at 1314-15 & n.16.

Counsel's tactical decisions on which defense to pursue are "virtually unchallengeable." Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (quoting Strickland). Because lawyers often face considerable time and financial limitations, they may reasonably rely on their own judgment in deciding whether to forgo investigation of a possible line of defense. Chandler, 218 F.3d at 1318 & n.22. In fact, "a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994). Accordingly, counsel's decision to curtail investigative efforts is also presumed reasonable, and the exclusion of other viable defenses does not establish ineffective assistance unless it is demonstrated that the course counsel actually chose was itself unreasonable. Chandler, 218 F.3d at 1318; Williams v. Head, 185 F.3d 1223, 1236-37 (11th Cir. 1999).

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769-70, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970).

Furthermore, "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (citations omitted). In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting McMann, 397 U.S. at 771, 90 S.Ct. at 1449). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano, 921 F.2d at 1150-51. Absent such blatant errors, however, the court should

"indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance. To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial. Conclusory, after-the-fact statements do not meet this requirement. *See* United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991); Key v. United States, 806 F.2d 133, 139 (7th Cir. 1987); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).

        b.        Federal Review of State Court Decision

The state court summarily denied Petitioner's claim on the ground that it was conclusively refuted by the transcript of the plea and sentencing hearing held on July 10, 2000 (Doc. 10, Ex. G at 23). Thus, the state court implicitly concluded Petitioner's plea was knowing and voluntary and not the result of counsel's allegedly deficient performance.

Petitioner does not allege the existence of any facts which would have indicated to his counsel that a viable alibi defense existed. Petitioner does not identify what his employer's time sheets would have shown and how this information would have provided a defense. Nor does he allege what his wife would have told counsel if he had interviewed her, let alone that the information she would have provided would have supported an alibi. Additionally, although Petitioner alleges the time sheets of the victim's father's employer would have shown the father had "possible access to the victim" (*see* Doc. 1 at 2a), it was not unreasonable for counsel to decline to pursue this line of investigation in light of Petitioner's admission to police that he committed sexual battery on the victim on at least four occasions, and neither the victim nor Petitioner could provide the exact time(s) of each assault (*see* Doc. 10, Ex. A at 105-158). Therefore, Petitioner has failed to show his counsel performed in a constitutionally deficient manner by failing to investigate an alibi defense. Accordingly, the state court's denial of his claim was not contrary to or an unreasonable application of Strickland.

        2.        Counsel Failed to File Motion to Suppress Statement to Law Enforcement

Petitioner claims that his counsel provided constitutionally ineffective assistance by failing to seek suppression of Petitioner's confession to police on the grounds that Detective Pond lied to Petitioner when he told him the child victim's hymen had been punctured, and Petitioner was under the influence of prescription medication when he confessed (*see* Doc. 1 at 1a).

As noted *supra*, the state court summarily denied this claim on the ground that it was conclusively refuted by the transcript of the plea and sentencing hearing held on July 10, 2000 (Doc. 10, Ex. G at 23). Thus, the state court implicitly concluded Petitioner's plea was knowing and voluntary and not the result of counsel's allegedly error.

The record conclusively establishes that Petitioner's counsel sought suppression of Petitioner's confession on several grounds, including that police tricked Petitioner by telling him the victim's hymen had been punctured, and that Petitioner was not mentally or emotionally capable of "resisting the coercive interrogation methods employed by the police" or mentally or emotionally capable of waiving his rights (Doc. 10, Ex. A at 14-16, 245-46, 267, 270-71). Because Petitioner failed to show his counsel performed in a deficient manner, the state court decision denying his claim was not contrary to or an unreasonable application of Strickland.

C.  Ground Three:

"I was denied effective assistance of counsel based on counsel's coercion and misadvice that rendered plea involuntarily made."

Ground Six:

"Plea obtained unlawfully through misadvice and coercion."

(Doc. 1 at 5, 6a). In Ground Three, Petitioner claims his no contest plea was based upon counsel's misleading him that the state appellate court would reverse the trial court's denial of the motion to suppress and the State would drop the charges on remand, thereby permitting Petitioner to go free (*id.* at 2a-3a). Additionally, Petitioner claims his counsel coerced him to enter a no contest plea by taking advantage of the fact that Petitioner was taking prescription medication and by advising him that he could be sentenced to life without parole if he proceeded to trial and was convicted (*id.* at 3a). Petitioner asserts he would not have entered a no contest plea if his counsel had not coerced and misadvised him (*id.*).

In Ground Six, Petitioner repeats his allegations set forth in Grounds Two and Three *supra* (*see* Doc. 1 at 6a).

        1.        Clearly Established Supreme Court Law

As discussed *supra*, the two-prong <u>Strickland</u> standard applies to claims of ineffective assistance of counsel. Petitioner must establish that his counsel failed to provide him with sufficient information to make an informed and conscious choice between accepting the State's plea offer and going to trial. Additionally, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.

        2.        Federal Review of State Court Decision

Petitioner raised this claim in his motion for postconviction relief (Doc. 10, Ex. G at 6-7). The state court summarily denied the claim on the ground that it was conclusively refuted by the transcript of the plea and sentencing hearing (*id.* at 23). Thus, the state court implicitly concluded Petitioner's plea was knowing and voluntary and not the result of counsel's alleged coercion and erroneous advice.

Petitioner's assertion that he did not understand that there existed the possibility that the state appellate court would affirm the trial court's denial of the motion to suppress and, as a result, Petitioner would be required to serve his thirty-five year sentence is directly contradicted by Petitioner's sworn statements during the plea colloquy. The following excerpt from the transcript of the plea hearing shows Petitioner understood the possibility that his conviction and sentence would be affirmed on direct appeal:

> COURT:    Okay. Did you have an opportunity to discuss the facts of this case with Mr. Miller?
> DEFENDANT:    Yeah, we have a little bit.
> COURT:    The plea that was just announced, you've gone over that with Mr. Miller?
> DEFENDANT:    Slightly, a little bit, yeah.
> COURT:    All right. You understand the consequences of your decision here this morning?
> DEFENDANT:    That I'm pleading no contest to thirty years on attempted sexual battery and five years to a lewd and lascivious and I got the right to come back and --

COURT: Right, and those sentences are going to run consecutive for a total of thirty-five years.
DEFENDANT: Yes, sir.
COURT: You're preserving your right to appeal the issue about the voluntariness of your confession and the <u>Miranda</u> warnings, and if you appeal that issue successfully, your conviction could be reversed. Do you understand that?
DEFENDANT: Yes, sir.
COURT: In which case you wouldn't go free, you'd come back and have a new trial.
DEFENDANT: Right.
COURT: You understand that.
DEFENDANT: I understand that.
COURT: And if the appellate issues are unsuccessful and you lose, then you just do your thirty-five years.
DEFENDANT: Right.
COURT: Okay, you understand that?
DEFENDANT: Yes, sir.
COURT: No one's mistreated you to get you to enter this plea, have they?
DEFENDANT: No.
COURT: No one has promised you'll be treated other than as announced by the State Attorney and your attorney?
DEFENDANT: No.
FLEET [State Attorney]: Your Honor, could I inquire just a minute?
COURT: Sure.
FLEET: Mr. McGuire, I want to make sure everything's fair for you and the State. You understand what you're doing here today and you've had discussions with your lawyer, I think, Friday, Saturday and Sunday and then also today?
DEFENDANT: Um hmmm.
FLEET: Is that correct?
COURT REPORTER: Please answer out loud, sir.
DEFENDANT: Yes.
MILLER [Petitioner's counsel]: Not Sunday. It was Friday and Saturday.
FLEET: Friday and Saturday.
DEFENDANT: Friday and Saturday.
FLEET: And he's discussed with you the pros and cons of going to trial and the risk of winning and losing and all of those facts concerning --
DEFENDANT: Yes, sir.
FLEET: And it is your feelings that the facts are sufficient in the case to create a risk of successful conviction against you in this case and you feel like this is in your best interest?

Case No.: 3:03cv479/LAC/EMT

      DEFENDANT:    At this time, yeah.

(Doc. 10, Ex. A at 202-05). A hearing was held three weeks later to clarify the record as to the factual basis for entry of the plea and to clarify that the trial court's denial of the motion to suppress was dispositive for purposes of appeal (*see* Doc. 10, Ex. A at 279-85). Additionally, the court was prepared to hear Petitioner's motion to withdraw his plea, but Petitioner decided to withdraw the motion (*id.*). At that hearing, the parties stipulated to submission of the transcripts of the child victim's statements and Petitioner's confession to police, as well as the police reports as part of the factual basis for the plea and conviction (*id.* at 280-81). Additionally, the parties stipulated that the State would not have a sufficient basis to prosecute Petitioner if the appellate court reversed the trial court's decision to deny Petitioner's motion to suppress his confession to police (*id.* at 281-82). Petitioner initially sought to withdraw his plea, but he withdrew his motion upon clarification that the attempted sexual battery charge was a first degree felony (*id.* at 283-84).

      The fact that counsel advised Petitioner that he would go free if the appellate court reversed the trial court on the suppression issue was not unreasonable, as the State agreed that the issue was dispositive of the conviction. Furthermore, the fact that counsel expressed confidence that the appeal would be successful does not render his performance unreasonable. Moreover, Petitioner's statements at the plea proceeding establish Petitioner understood the possibility existed that the appellate court would affirm the trial court's decision.

      Likewise, Petitioner failed to show his counsel performed deficiently by advising him that he could be sentenced to life without parole if he proceeded to trial and was convicted. Petitioner was originally charged with sexual battery by a person eighteen years of age or older upon a person less than twelve years of age by vaginal penetration by the fingers or hand (Doc. 10, Ex. A at 3). In his confession to police, Petitioner stated:

> A:   . . . the only thing that I see that I did that might have been wrong was the part rubbing [sic] on her there, accidentally hitting her in the vagina. Those I can understand her going [sic] they're wrong. And I know they're wrong and shouldn't have happened.
> . . . .
> A:   Worst thing I might have done to Mary Ann [child victim]?
> Q:   Yes.

      A:      Probably touched her vagina and scratched it, or whatever the case may be.
      Q:      Okay. And you did that how many times?
      A:      Just one time I did that.
      Q:      Okay. And how long was your hand inside her vagina?
      A:      About two second and that was it, a second.
      Q:      Did you rub it a little bit?
      A:      It was just instant touch and realized --
      Q:      That's when your -- skin on your finger touched the skin of her vagina?
      A:      Yes, sir.
      Q:      And you think you could have scratched her possibly?
      A:      Yes, sir, cause I always got hangnails.
      Q:      Okay.
      A:      I got hangnails right now just about on every one of my fingers.
      Q:      You realized you touched her vagina and you realize that was wrong?
      A:      Yes, sir.
      Q:      Okay.
      A:      Most definitely that was wrong.
      Q:      How far did you put your finger into her vagina?
      A:      It was --
      Q:      Roughly. I mean, it's kind of hard because you're trying to show me in person.
      A:      That's what I'm saying.
      Q:      Just for tape reference, how far do you think it went in? Do you think it went in an inch?
      A:      No, it didn't go in an inch.
      Q:      Half inch?
      A:      It was just touch and out. I might have touched and scraped when it came out.
      Q:      But did it go -- okay.
      A:      All that was wet on my finger was the tip of my finger.
      Q:      Tip of the finger then?
      A:      Tip of my finger.

(Doc. 10, Ex. A at 131, 140-42).

     Florida law provides that a person eighteen years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than twelve years of age commits a capital felony punishable by life imprisonment. Fla. Stat. § § 794.011(2)(a), 775.082(1). Therefore, counsel's advice to Petitioner that he could face life

imprisonment if convicted of the crime for which he was originally charged was not erroneous.[2] Petitioner having failed to satisfy the Strickland standard as to his claims of coercion and erroneous advice by counsel, he is not entitled to federal habeas relief.

  D. Ground Four:

  "I was denied effective assistance of counsel based on a conflict of interest."

  Ground Five:

  "Trial court erred by allowing me to continue my criminal proceedings with conflicted counsel without a waiver."

(Doc. 1 at 5, 5a). Petitioner asserts that prior to entry of his no contest plea, he filed a motion to dismiss counsel from the case, as well as a complaint with the Florida Bar (*id.* at 4a). Petitioner alleges his counsel became aware of the Bar complaint and insisted that Petitioner plead no contest and appeal the suppression issue in an effort to "negate" the Bar complaint (*id.* at 4a-5a). Essentially, Petitioner alleges his counsel avoided disciplinary action by insisting Petitioner plead no contest. Petitioner additionally asserts his counsel notified the trial judge that Petitioner had filed a Bar complaint, but the judge failed to replace counsel or seek a waiver of the conflict from Petitioner (*id.* at 5a). Petitioner states his counsel's conflict of interest caused him to enter an involuntary plea.

  1. Clearly Established Supreme Court Law

  The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, and effective assistance includes a right to counsel unencumbered by conflicting interests. Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Duncan v. State of Ala., 881 F.2d 1013, 1016 (11th Cir. 1989). To violate the Constitution, however, the conflict must be actual, not merely possible, hypothetical, or potential. Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719; Mills v. Singletary, 161 F.3d 1273, 1287 (11th Cir. 1998). When defense counsel is forced to represent divergent interests over his timely objection, an automatic reversal rule applies, unless the trial court has determined that there is no conflict. Mickens v. Taylor, 122 S.Ct. 1237, 1241-42 (2002) (discussing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)).

  To demonstrate an actual conflict:

---

[2]The charges was reduced to one count of attempted sexual battery and one count of attempted lewd and lascivious conduct as part of the plea agreement (*see* Doc. 10, Ex. A at 168).

[petitioner] "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence" that favors an interest in competition with that of the defendant. Smith v. White, 815 F.2d 1401, 1404 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). "If [the attorney] did not make such a choice, the conflict remained hypothetical." *Id.* Buenoano v. Singletary, 74 F.3d 1078, 1086 n.6 (11th Cir.), *cert. denied*, 117 S.Ct. 520, 136 L.Ed.2d 408 (1996). Petitioner must point to specific instances in the record that demonstrate an actual conflict. Mills, 161 F.3d at 1287. While Petitioner need not prove that eradicating the conflict would have necessarily changed the result of the trial, he must show that the conflict adversely affected counsel's representation. Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719; Mills, 161 F.3d at 1288. As to a trial court's duty to initiate an inquiry, the Supreme Court has instructed that to protect a defendant's right to conflict-free counsel, a trial court must initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest. Wood v. Georgia, 450 U.S. 261, 272 and n. 18, 101 S.Ct. 1097, 1104 and n. 18, 67 L.Ed.2d 220 (1981).

        2.        Federal Review of State Court Decision

Petitioner raised both claims in his Rule 3.850 motion (*see* Doc. 10, Ex. G at 8-9). The trial court denied the claims on the ground that the transcript of the plea and sentencing hearing conclusively demonstrated Petitioner was not entitled to relief (*id.* at 23).

The fact that Petitioner filed a Bar complaint against his trial counsel does not, of itself, show counsel's interests were inconsistent with Petitioner's. The outcome of Petitioner's case, including whether he proceeded to trial or entered a guilty plea, had no effect upon the investigation or resolution of the ethical complaint against counsel. *See* Florida Bar v. Bajoczky, 558 So.2d 1022 (Fla. 1990) (attorney subject to disciplinary action even though court noted quality of legal representation was good). Thus, the fact that Petitioner entered a no contest plea did not benefit counsel or advance his interests in any way. Because Petitioner failed to make a factual showing of an actual conflict of interest on counsel's part, he is not entitled to federal habeas relief on either claim.

For the foregoing reasons, it is, therefore, respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 27th day of May, 2005.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**